No. 24-1316

# United States Court of Appeals
# For the First Circuit

On Appeal from the United States District Court for the District of
New Hampshire, Docket 1:23-cv-00499-JL-AJ (Hon. Joseph M. Laplante)

**LYNN-DIANE BRIGGS,** *pro se*
Registered Republican

**WAYNE PAUL SAYA, SR.,** *pro se*
Registered Republican

*Appellants'*

v

**DAVID SCANLAN**
in his official capacity as
SECRETARY OF STATE FOR NEW HAMPSHIRE

*Appellee*

## BRIEF OF APPELLANTS'

Lynn-Diane Briggs
4 Golden Pond Lane
Amherst, NH 03031
603 801-6886
lynbdance@gmail.com

Wayne Paul Saya, Sr.
24 Cadogan Way
Nashua, NH 03062
571-220-3344
waynesaya2@gmail.com

1

Page

# TABLE OF AUTHORITIES

| | |
|---|---|
| 5, 6, | New Hampshire Statute RSA 659:14 |
| 6-8 | New Hampshire Statute RSA 654:34 |

Federal Codes/Statutes

| | |
|---|---|
| 8 | 42 U.S. Code § 1983 - Civil action for deprivation of rights |
| 8-9 | 18 U.S. Code § 242 - Deprivation of rights under color of law |
| 9 | 18 U.S. Code § 595 - Interference by administrative employees of Federal, State, or Territorial Governments. |
| 9-10 | 52 U.S. Code § 10101 - Voting rights |
| 10-11 | 42 U.S. §1973a.(c) - Proceeding to enforce the right to vote |
| 11-14 | 28 U.S. Code § 1292 - Interlocutory decisions |

State/Federal Bill of Rights and Constitutional Provisions

| | |
|---|---|
| 14 | N.H. Bill of Rights: Article 1, Equality of Men; Origin and Object of Government. |
| 14-15 | NH Constitution, Art. 11, Elections and Elective Franchises. |
| 15 | NH Constitution Art. 14, Legal Remedies to be Free, Complete, and Prompt. |
| 15-16 | NH Constitution, Art.15. Right of Accused. |
| 16 | Federal Constitution, 14-Amendment, Due Process and Equal Protection, Clause 1 – |
| 16 | U.S. Constitution - Section 4 Congress, Clause 1, Elections Clause |
| 16 | U.S. Constitution, Article II, Section 1 Function and Selection Clause 2 – Electors |
| 16-17 & 20 | U.S. Constitution, Article III, Section 2, Clause 1 (Standing) |

| | |
|---|---|
| 17 | ISSUES PRESENTED |
| 17-19 | JURISDICTION |
| 19 | APPELLANTS VOLUNTARY DISMISSAL OF STATE DEFENDANT |
| 19-25 | NATURE OF THE CASE, with Sua Sponte overview |

26-34    The District Court's Sua sponte Transfer of the Instant Case, subjected the *pro se* Appellants to an unfair disadvantage in arguing the issue of 'standing'.

## APPELLANTS ARGUMENTS

25-27    (1) Appellants Pleading to the U.S. Court of Appeals

27-31    (2) The Appellants Have Standing Under the 'Standing' requirements of Article III of the United States Constitution.

31-34    (3) The District Court did not address the appellants 'standing' under 18 U.S.C. § 242. Depravation of due process of law and depravation of equal application of the law under color of state law.

34-36    (4) The Appellants Argue that the Harper/Bruen Methodology Provides 'Standing' When State Election Laws Are Violated in Federal Elections.

36-37    CONCLUSION

38    CERTIFICATE OF COMPLIANCE

39    CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page**

35-36    *Alexander, President of the South Carolina Senate, et al. v South Carolina State Conference of the NAACP, et al.*
        No. 22–807, —Decided May 23, 2024

30    *Biden v. Nebraska*
        143 S.Ct. 2355 (2023)

19    *Briggs, et al vs. Scanlan*
        No. 24-1316

32     *Bush v Gore*
         531 U.S. 98 (2000)

31     *Castro v Scanlan*
         Civil No. 23-cv-531-SE Opinion No. 2024 DNH 002

31     *Castro v Scanlan*
         86 F 4th 947 (1st Cir 2023)

30     *Cruz-Arce v.Management Administration Services Corporation*
         19 F.4th 538, (1st Cir. 2021)

25     *Guidry v. Bank of LaPlace*
         *954 F.2d 278 (5th Cir. 1992)*

33     *Heckler v. Chaney*
         *470 U.S. 821(1985)*

17     *Lindke v. Freed*
         601 U.S. __, __ S. Ct. __, Dkt No. 22-611, Decided March 15, 2024.

27, 29   *Lujan v. Defenders of Wildlife*
         504 U.S. 555 (1992)

26     *Miller v. Stanmore*
         *636 F.2d 986, 988 (5th Cir. 1981).*

27     *Monell v. Department of Soc. Svcs.*
         436 U.S. 658 (  )

17 &    *Moore v Harper*
34-37    600 U.S. 1 (June/2023)

17 &    *New York State Rifle & Pistol Assn., Inc. v. Bruen*
34-36    597 U. S. 1, (2022)

25-26   *Raskin v. Jenkins*
         *Civil Action No. 3:22-CV-2012, decided November 2, 2022.*

36-37   *Smiley v. Holm*
        285 U.S. 355 (1932)

26     *Valentin v. Hosp. Bella Vista*
        254 F.3d 358, 363 (1st Cir. 2001)

**Statutes and Codes**

New Hampshire Statutes
TITLE LXIII, ELECTIONS
CHAPTER 659
ELECTION PROCEDURE
Voting Procedure
Section 659:14
**659:14 Special Provisions for State and Presidential Primary Elections. –**
I. A person desiring to vote at a state or presidential primary election shall, at the time of announcing the person's name, also announce the name of the party to which the person belongs or whether the person is registered as an undeclared voter. If the person's party membership has been registered before, the person shall be given only the ballot of the party with which the person is registered, unless the person desires to vote the ballot of a party not having official existence at the time the person's party membership was previously registered, in which case the person may vote the ballot of such a party in the state primary election immediately following the political organization's official existence as a party, and not in any subsequent state primary election. A person may also vote the ballot of such a party in the presidential primary election only if the presidential primary election precedes the state primary election to be held in that same year. If the rules of a party permit a person who is registered as an undeclared voter to vote in the party's primary, any person desiring to vote in that party's primary shall also announce the name of that party at the time of announcing the person's name. No person shall be permitted to vote in any more than one party primary during any primary election.
II. The secretary of state shall include on the voter instruction cards required by RSA 658:28 whether a party rule has been adopted which permits a person who is registered as an undeclared voter to vote in the party's primary. The party chairman shall notify the secretary of state in writing prior to the filing period for state offices whether the party has adopted such a rule. This rule shall not be changed or rescinded by a party

until the results of the primary have been announced, and any change or rescission shall be mailed to the secretary of state by the party chairman.
Source. 1979, 436:1. 1987, 129:1. 1993, 193:6. 1994, 218:1, eff. May 25, 1994.

## TITLE LXIII, ELECTIONS

## CHAPTER 654
## VOTERS AND CHECKLISTS

### Checklists: Additional Provisions for Primary Elections

### Section 654:34
#### 654:34 Change of Registration. –
I. Change of registration of a voter whose party membership has been previously registered.
(a) Any legal voter whose party membership has been registered may change such registration by appearing in person before the supervisors of the checklist for his town or ward any time they meet, except as prohibited by paragraph IV, and stating to them under oath or affirmation, if required, that:
(1) He intends to affiliate with and generally supports the candidates of the party with which he offers to register, in which case he shall be registered as a member of such party; or
(2) He does not wish to be registered as a member of any party, in which case his party designation shall be removed from the checklist.
(b) He may also change such registration at any primary, upon making oath or affirmation to the same effect, but he shall not be permitted in such case to vote the ballot of any party at such primary.
II. Change of registration of a voter who has been registered as an undeclared voter.
(a) Any legal voter who has been registered as an undeclared voter may register as a member of the party of the voter's choice by appearing before the supervisors of the checklist for the voter's town or ward any time they meet, except as prohibited by paragraph IV, and stating to them, under oath or affirmation, if required, that the voter intends to affiliate with and generally supports the candidates of the party with which the voter offers to register, in which case the voter shall be registered as a member of such party.
(b) A voter may also register as a member of a party at any primary by

requesting to be registered as a member and voting the ballot of the party of the voter's choice. A voter may also register once again as an undeclared voter after voting in a primary as a registered member of a party by returning the card or signing the list of undeclared voters from the statewide centralized voter registration database provided for in paragraph V. If cards are used, the voter shall return the card to the person at the polls designated by the town or city clerk to accept the card. All such cards and lists shall be in the possession of the supervisors of the checklist at the close of the polls on election day.

III. Notwithstanding any provision of paragraphs I and II to the contrary, no person who has voted in a primary may thereafter on the day of said primary change the person's party registration, unless, prior to voting in the primary, the person was registered as an undeclared voter, in which case the person may once again register as an undeclared voter, as provided in subparagraph II(b).

IV. No person, who is already registered to vote, whether his party membership has been previously registered or not, shall affiliate with a party or disaffiliate from a party between the first Wednesday in June and the day before the state primary election.

V. (a) At any primary, the supervisors of the checklist shall make available within the polling place a card or list of undeclared voters from the statewide centralized voter registration database to enable a voter who was registered as an undeclared voter but who changed registration on the day of the primary in order to vote as a registered member of a party to change registration so that the voter is registered once again as an undeclared voter. The card or list shall be in substantially the following form:

Name _____
(Print)
Address _____  .

_____

_____

I hereby request that my political party registration be changed as follows:

From: Democrat [ ], or Republican [ ], or (name of any party determined by the secretary of state to have achieved official status under RSA 652:11) [ ]

To: Undeclared [ ]
Signed under the pains and penalties of perjury.

(b) The supervisors of the checklist, upon receipt of such a card or list, shall keep it in accordance with RSA 33-A:3-a and at the public session of supervisors of the checklist on election day shall change the party of the voter as indicated on the card or list.

**Source.** 1979, 400:3, 4; 436:1. 1981, 308:3-5. 1987, 129:2. 1993, 193:2-5. 2010, 172:8. 2011, 73:1. 2012, 113:2, 3, eff. May 31, 2012. 2018, 165:1, eff. Aug. 7, 2018.

### United States Code (Law)

### 42 U.S. Code § 1983 - Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(R.S. § 1979; Pub. L. 96–170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104–317, title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853.)

### 18 U.S. Code §242 - Deprivation of rights under color of law

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon,

explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(June 25, 1948, ch. 645, 62 Stat. 696; Pub. L. 90–284, title I, § 103(b), Apr. 11, 1968, 82 Stat. 75; Pub. L. 100–690, title VII, § 7019, Nov. 18, 1988, 102 Stat. 4396; Pub. L. 103–322, title VI, § 60006(b), title XXXII, §§ 320103(b), 320201(b), title XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 1970, 2109, 2113, 2147; Pub. L. 104–294, title VI, §§ 604(b)(14)(B), 607(a), Oct. 11, 1996, 110 Stat. 3507, 3511.)


## 18 U.S. Code § 595 - Interference by administrative employees of Federal, State, or Territorial Governments

Whoever, being a person employed in any administrative position by the United States, or by any department or agency thereof, or by the District of Columbia or any agency or instrumentality thereof, or by any State, Territory, or Possession of the United States, or any political subdivision, municipality, or agency thereof, or agency of such political subdivision or municipality (including any corporation owned or controlled by any State, Territory, or Possession of the United States or by any such political subdivision, municipality, or agency), in connection with any activity which is financed in whole or in part by loans or grants made by the United States, or any department or agency thereof, uses his official authority for the purpose of interfering with, or affecting, the nomination or the election of any candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner, shall be fined under this title or imprisoned not more than one year, or both.

This section shall not prohibit or make unlawful any act by any officer or employee of any educational or research institution, establishment, agency, or system which is supported in whole or in part by any state or political subdivision thereof, or by the District of Columbia or by any Territory or Possession of the United States; or by any recognized religious, philanthropic or cultural organization.

(June 25, 1948, ch. 645, 62 Stat. 720; Pub. L. 91–405, title II, § 204(d)(6), Sept. 22, 1970, 84 Stat. 853; Pub. L. 103–322, title XXXIII, § 330016(1)(H), (L), Sept. 13, 1994, 108 Stat. 2147.)

## 52 U.S. Code § 10101 - Voting rights

**(a) RACE, COLOR, OR PREVIOUS CONDITION NOT TO AFFECT RIGHT TO VOTE; UNIFORM STANDARDS FOR VOTING QUALIFICATIONS; ERRORS OR OMISSIONS FROM PAPERS; LITERACY TESTS; AGREEMENTS BETWEEN ATTORNEY GENERAL AND STATE OR LOCAL AUTHORITIES; DEFINITIONS**
**(1)**
All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding.

**(2) No person acting under color of law shall—**
**(A)**
in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote;
**(B)**
deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election;

## Title 42 - THE PUBLIC HEALTH AND WELFARE
## CHAPTER 20 - ELECTIVE FRANCHISE
## SUBCHAPTER I-A - ENFORCEMENT OF VOTING RIGHTS
Sec. 1973a - Proceeding to enforce the right to vote
§1973a. Proceeding to enforce the right to vote

**(c) Retention of jurisdiction to prevent commencement of new devices to deny or abridge the right to vote**

If in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision the court finds that violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred within the territory of such State or political subdivision, the court, in addition to such relief as it may grant, shall retain jurisdiction for such period as it may deem appropriate and during such period no voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different from that in force or effect at the time the proceeding was commenced shall be enforced unless and until the court finds that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the voting guarantees set forth in section 1973b(f)(2) of this title: *Provided*, That such qualification, prerequisite, standard, practice, or procedure may be enforced if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, except that neither the court's finding nor the Attorney General's failure to object shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure.

(Pub. L. 89–110, title I, §3, Aug. 6, 1965, 79 Stat. 437; renumbered title I, Pub. L. 91–285, §2, June 22, 1970, 84 Stat. 314; amended Pub. L. 94–73, title II, §§205, 206, title IV, §§401, 410, Aug. 6, 1975, 89 Stat. 402, 404, 406; 1978 Reorg. Plan No. 2, §102, eff. Jan. 1, 1979, 43 F.R. 36037, 92 Stat. 3783.

## 28 U.S. Code § 1292 - Interlocutory decisions

(a)Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1)

Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

(2)

Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

(3)

Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

**(b)**

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

**(c)**The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

**(1)**

of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title; and

**(2)**

of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

**(d)**

**(1)**

When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

**(2)**

When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

**(3)**

Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Court of Federal Claims, as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Court of Federal Claims or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

**(4)**

**(A)**

The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title.

**(B)**

When a motion to transfer an action to the Court of Federal Claims is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Court of Federal Claims pursuant to the motion shall be carried out.

**(e)**

The Supreme Court may prescribe rules, in accordance with section 2072 of this title, to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

(June 25, 1948, ch. 646, 62 Stat. 929; Oct. 31, 1951, ch. 655, § 49, 65 Stat. 726; Pub. L. 85–508, § 12(e), July 7, 1958, 72 Stat. 348; Pub. L. 85–919, Sept. 2, 1958, 72 Stat. 1770; Pub. L. 97–164, § 125, Apr. 2, 1982, 96 Stat. 36; Pub. L. 98–620, title IV, § 412, Nov. 8, 1984, 98 Stat. 3362; Pub. L. 100–702, title V, § 501, Nov. 19, 1988, 102 Stat. 4652; Pub. L. 102–572, title I, § 101, title IX, §§ 902(b), 906(c), Oct. 29, 1992, 106 Stat. 4506, 4516, 4518.)

### State/Federal Bill of Rights and Constitutional Provisions
### N.H. Bill of Rights:
**Article 1. [Equality of Men; Origin and Object of Government.].** All men are born equally free and independent; Therefore, all government of right originates from the people, is founded in consent, and instituted for the general good.
June 2, 1784*
### NH Constitution
**[Art.] 11. [Elections and Elective Franchises.]** All elections are to be free, and every inhabitant of the state of 18 years of age and upwards shall have an equal right to vote in any election. Every person shall be considered an inhabitant for the purposes of voting in the town, ward, or unincorporated place where he has his domicile. No person shall have the right to vote under the constitution of this state who has been convicted of treason, bribery or any willful violation of the election laws of this state or of the United States; but the supreme court may, on notice to the attorney general, restore the privilege to vote to any person who may have forfeited it by conviction of such offenses. The general court shall provide by law for voting by qualified voters who at the time of the biennial or state elections, or of the primary elections therefor, or of city elections, or of town elections by official ballot, are absent from the city or town of which they are inhabitants, or who by reason of physical disability are unable to vote in person, in the choice of any officer or officers to be elected or upon any question submitted at such election. Voting registration and polling places shall be easily accessible to all persons including disabled and elderly persons who are otherwise qualified to vote in the choice of any officer or officers to be elected or upon any question submitted at such

election. The right to vote shall not be denied to any person because of the non payment of any tax. Every inhabitant of the state, having the proper qualifications, has equal right to be elected into office.
June 2, 1784
Amended 1903 to provide that in order to vote or be eligible for office a person must be able to read the English language and to write.
Amended 1912 to prohibit those convicted of treason, bribery or willfull violation of the election laws from voting or holding elective office.
Amended 1942 to provide for absentee voting in general elections.
Amended 1956 to provide for absentee voting in primary elections.
Amended 1968 to provide right to vote not denied because of nonpayment of taxes. Also amended in 1968 to delete an obsolete phrase.
Amended 1976 to reduce voting age to 18.
Amended 1984 to provide accessibility to all registration and polling places.

**NH Constitution**
**[Art.] 14. [Legal Remedies to be Free, Complete, and Prompt.]** Every subject of this State is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.
June 2, 1784
**[Art.] 15. [Right of Accused.]** No subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse or furnish evidence against himself. Every subject shall have a right to produce all proofs that may be favorable to himself; to meet the witnesses against him face to face, and to be fully heard in his defense, by himself, and counsel. No subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land; provided that, in any proceeding to commit a person acquitted of a criminal charge by reason of insanity, due process shall require that clear and convincing evidence that the person is potentially dangerous to himself or to others and that the person suffers from a mental disorder must be established. Every person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel at the expense of the state if need is shown; this right he is

at liberty to waive, but only after the matter has been thoroughly explained by the court.

June 2, 1784

Amended 1966 to provide the right to counsel at state expense if the need is shown.

Amended 1984 reducing legal requirement proof beyond a reasonable doubt to clear and convincing evidence in insanity hearings.

### Federal Constitution
### 14-Amendment, Due Process and Equal Protection, Clause 1 -

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **Equal Protection** - nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

### U.S. Constitution - Section 4 Congress, Clause 1, Elections Clause

The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of choosing Senators.

### U.S. Constitution, Article II, Section 1 Function and Selection

### Clause 2 - Electors

Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

Article III, Section 2, Clause 1: (On the issue of 'standing')

*The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of*

*admiralty and maritime Jurisdiction; to Controversies to which the United States shall be a Party;—to Controversies between two or more States; between a State and Citizens of another State, between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.*

## ISSUES PRESENTED

1. The trial Court Ruled Only on the Issue of "Vote Dilution".

2. The trial court did not address 42 USC § 1983, 18 U.S.C. § 242,[1] under color of state law standard, and 18 U.S. Code § 595 - Interference by administrative employees of Federal, State, or Territorial Governments, as they relate to the issue of appellants 'standing'.

3. The Harper/Bruen Methodology Provides 'Standing' When State Election Laws RSA 659:14 and 654:34 violate Federal Election law 52 U.S. Code § 10101 - Voting rights.

## JURISDICTION

5.   U.S. Constitution, Article III, Section 2, Clause 1 (Standing)

6.   Judiciary and Judicial Procedure, 28 U.S.C. § 1292 - U.S. Code - Title 28.

Judiciary and Judicial Procedure § 1292. Interlocutory decisions.

7.   18 U.S. Code § 595, - Interference by administrative employees of Federal,

State, or Territorial Governments.

---

[1] See *Lindke v. Freed, 601 U.S. ----, --- S. Ct. ---, 2024, Dkt No. 22-611, (Decided March 15, 2024)* "[T]he traditional definition of state action requires that the defendant ... have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law (citations and quotations omitted)".

8.    This court has subject-matter jurisdiction under 42 U.S.C. §1983, where the Plaintiff alleges violations of their procedural and substantive due-process and equal protection rights pursuant to:

(1) The "'Elector's" clause of Article II, Section 1. Clause 2, and

(2) The "Elections" clause of Article I, Section 4, Clause 1, as provided for under the Fourteenth Amendment to Federal Constitution,

52 U.S. Code§ 10101 - Voting rights, and 42 U.S.C. 1973a (c), or Section 3(c) .

9.    Plaintiff requests the court to take judicial notice of Title 18 U.S.C. 29, §595 (Interference by Administrative Employees of the Federal, State, or Territorial Governments).

10.    Pursuant to 18 U.S. Code §242 - Deprivation of rights *under color of law* for deprivation of my rights, privileges, and immunities secured and protected by the due-process clause and section 1 of the fourteenth Amendment to the United States.

11.    Under 28 U.S.C. 1367 this Court maintains supplemental jurisdiction over state constitutional claims, where the Defendants continue to cause harm.

12.    This Court exercises subject matter jurisdiction under 28 U.S.C. § 1331, which confers original jurisdiction on federal district courts to hear suits secured by the United States Constitution while acting under color of state law.

13.  47. This Court has the authority to the requested declaratory relief under 28 U.S.C. §2201, and the requested injunctive relief under 28 U.S.C. § 1343(a).

## APPELLANTS VOLUNTARY DISMISSAL OF STATE DEFENDANT

14.  This appeal consists of two individual appellants', Lynn-Diane Briggs "appellant Briggs" and Wayne Paul Saya, "appellant Saya" or "appellants". A third plaintiff, Karen Testerman, did not file a notice of appeal, instead later filing a second independent action with the Federal District of New Hampshire (NH First Circuit doc. No. 24-cv-00020-LM-AJ).

15.  The plaintiffs' original complaint named two 'defendants', Chris Ager, Chairman of the New Hampshire Republican State Committee, and David Scanlan, Secretary of State for New Hampshire. On or around March 13, 2024, appellants Briggs and Saya filed a 'Motion for Voluntary Dismissal of Defendant Chris Ager, Without Prejudice'. (Pacer doc. No. 80), and on April 12, 2024, said motion was approved by the court.

16.  Nonetheless, Chris Ager is named in this appeal as a non-party appellee.

17.  This appeal is therefore entitled *Briggs, et al vs. Scanlan*.

## NATURE OF THE CASE

18.  This is an appeal by two of three *pro se* plaintiffs' from judgement of the U.S. District Court, First Circuit, for the District of New Hampshire. After a one day hearing held on January 5, 2024, the Honorable Joseph N. Laplante, "the

District Court" on January 9, 2024, granted the defendants' motions to dismiss the plaintiffs case, finding that the three plaintiffs lacked 'standing' under *article III, section 2, clause I, of the U.S. Constitution*, to sue. *(See 'Order', Pacer doc. no. 67)*. Judgment in the defendants' favor was entered the same day. *(Pacer doc. no. 68)*. In-turn, On February 1[st], 2024, the plaintiffs filed their first motion to 'Alter or Amend Judgement' under Fed. R. Civ. P. 59(e). *(Pacer doc no. 70)*. Upon the District court's approval of Appellees motion to dismiss, the appellants filed a second 59(e) motion (for clarification) on March 1, 2024 *(Pacer Doc no. 73)*.

19.     The case presents a question of 'standing' under color of State law pursuant to the due-process (Constitution of NH, Art 14 and 15) and equal protection (Const. N.H. Part I, art. 1 and 11, and 14) of New Hampshire and of the Due Process and Equal Protection clauses of the Fourteenth Amendment to the Federal constitution.

20.     Secondly, in support of 'standing', did the Appellee violate the federal Electors Clause and the Elections Clause by taking—or allowing—non-legislative actions to change state legislative laws that would govern the unlawful appointment of presidential electors? *See Pacer Doc No. 32, pars. 50-55, Plaintiffs Amended Complaint, Count I* and *pars 57-59, Count II.*

21.     The appellants testimony outlined their physical and financial stake in the Republican and Democrat Presidential primary Elections, and the constitutional

and, emotional, and financial harm they each suffered as a consequence of the appellees unlawful actions.

22.    The premise of the case: when state Election laws were knowingly violated, and state Electors are chosen or selected as a result of those state Election law violations, those State Electors for both parties are now unlawful?

23.    The appellees submit that the recent New Hampshire State Presidential primaries of <u>Republican nominee candidate Donald Trump</u> and <u>Democrat nominee candidate Joseph Biden</u> were conducted under color of state law, ignoring Federal Election laws along with the Federal Elections clause and the Federal Electors clause, resulting in these Presidential primaries and all future congressional and senatorial primaries and Elections thereto unlawful and thereby null-and-void.

24.    The constitutional violations as alleged directly relate to the harm (as described below) suffered by the appellants when the appellee violated New Hampshire, N.H. RSA §659:14, et seq. and RSA §654:34, et seq., when the Appellee intentionally failed to limit the New Hampshire Republican Party's 2024 Presidential Primary to those only  properly registered Republican primary voters who have "publicly affiliated" with the New Hampshire Republican Party.

25.    The NHGOP Party Chair Chris Ager (Now a non-party appellee) and appellee Scanlan, acting 'under color of state law', acted to injure the appellants in their free exercise or enjoyment of any right or privilege secured by the

Constitution or laws of the United States, and sought to deprive them of their rights, privileges, or immunities secured and protected by the Constitution and laws of the United States, when individually and in concert both appellees knowingly and willingly violating the appellants due-process and equal protection rights. *See Pacer Doc No. 32, pars. 61-65, Plaintiffs Amended Complaint, Count III ,* and *Count IV, pars 67-71.*

**The District Court's Sua sponte Transfer of the Instant Case, subjected the *pro se* Appellants to an unfair disadvantage in arguing the issue of 'standing'.**

26.     On the morning of Friday, Dec 29, 2023 at 11:20 AM, District Court Deputy Clerk Jadean Barthelmes received a phone-call from defendant Ager's attorney (attorney Rhodes) in reference to a subpoena served upon his client (defendant Chris Ager) as it relates to the scope of a January 5, 2024 scheduled hearing on appellees motion for injunctive relief, previously scheduled by Magistrate Johnstone. After this *ex parte* discussion between attorney Rhodes and Judge Laplante, without the plaintiffs prior knowledge of this call or plaintiffs participation during the phone-call, Judge Laplante scheduled a video-conference for Tuesday, January 2, 2024, three days before Magistrate Johnstone's scheduled hearing for plaintiffs  injunctive relief. During the video-conference call, the

appellants learned that Magistrate Johnstone would be replaced by Judge Jospeph Laplante. [2]

27.    Accordingly, during this January 2nd conference call, Judge Laplante explained that he had an issue regarding the plaintiffs 'standing' in this case, and in-turn changed the hearing for injunctive relief to a hearing regarding the plaintiffs 'standing', *(See January 2nd, 2024 video conference call).*

28.    At this point, where the court could have listened to the totality of circumstances which provided the appellants an individualized 'stake' and 'cause of harm', regarding issues that were constantly overlapping from having 'standing' to arguing the merits, and vise-versa, the District Court increased the appellants difficulty of proving 'standing' against an attorney general's office and an upper tier law firm, both seasoned in extinguishing "tough uphill battle[s]".

> "THE COURT: Okay. A couple comments. First of all, let me just commend everybody here, every single person who's here, by the way. This is -- you've conducted yourselves, <u>the plaintiffs as pro se litigants in a difficult forum. Federal court's no picnic</u>." *01/05/24 Hearing Transcript, pg. 112, lines 19-23The Court's Summation.*
> THE COURT: "<u>Standing is a tough uphill battle</u>. It just is. All right? And, you know, you really -- I was looking over at my law clerk when you were talking, who I work with, you know, on legal research." *01/05/24 Hearing Transcript, pg. 113, lines 8-11, The Court's Summation.* <u>Emphasis supplied</u>

---

[2] See non-numbered Pacer notation: RESCHEDULING HEARING NOTICE (to change presiding judge). Evidentiary Hearing set for 1/5/2024 at 01:30 PM before Judge Joseph N. Laplante.(jb) (Entered: 12/29/2023)

29.    In-turn, Judge Laplante replaced Magistrate Johnstone who originally scheduled January 5th, 2024 to hear plaintiff's motion for injunctive relief, where the issue of standing would have also been addressed, and thus leveling the playing field.

30.    Pursuant to the *pro se* appellants confusion and inexperience as to the *ex parte* court procedures used to change their approved motion for injunctive relief to an issue of 'standing', and appellants inexperience in objecting to or challenging such an *ex parte* meeting between Judge Laplante and defense counsel Rhodes, the *pro se* appellants were faced with separating certain merits of the case with last minute legal requirements of 'standing'.

31.    Accordingly, the January 5, 2024 hearing transcript on the issue of 'standing' will reveal the struggle that the *pro se* appellants experienced when trying to separate the complicated issue of 'standing' from the merits of the case.

32.    The District court hearing was an exercise in showing the public, either spend thousands of dollars in legal fees to obtain the relief sought, or learn the rules and laws in controversy within weeks that attorneys with law degrees take years to learn. Obviously this is an unfair statement by the appellants, but nonetheless accurate.

33.    No appeal by the appellants is made for this reasoning, but if the *pro se* litigants are required to move the court by motion or petition only, than attorneys

representing defendants against *pro se* litigants should not have the ability in a political controversy to move the court by a phone-call days after a magistrate makes a ruling favoring *pro se* litigants. (*See EXHIBIT A, Email dated Fri, Dec 29, 2023 at 6:30 PM*) [3]

34.     Accordingly, it is not because an impropriety has been performed, but the appearance of favoritism toward fellow members of the bar association against *pro se* litigants, whom are not members of this association showed the appearance of an impropriety.

## APPELLANTS ARGUMENTS

### 1.     Appellants Pleading to the U.S. First Circuit Court of Appeals

35.     With regard to the *pro se* appellants in this case, the appellants ask the Honorable First Circuit Court of Appeals for reasonable latitude with fairness in their judgement.

36.     The overlapping of issues within the issue of 'standing' and the merits of the case were too complicated to overcome by unseasoned *pro se* litigants. For this reasoning the appellants would respectfully offer to this court the case of *Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992)* as cited in *Raskin v. Jenkins, Civil Action No. 3:22-CV-2012, decided November 2, 2022.*

---

[3]  At all times the plaintiffs were treated fairly and honestly by all court clerks, and nothing said here should reflect negatively in any way toward their honesty and integrity.

". . . *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore, 636 F.2d 986, 988 (5th Cir. 1981).* "Regardless of whether the plaintiff is proceeding *pro se* or represented by counsel, pleadings must show specific, well pleaded facts, not mere conclusory allegations to avoid dismissal." *Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992)* as cited in *Raskin v. Jenkins, Civil Action No. 3:22-CV-2012, decided November 2, 2022.*

37.    The merits of the appellants case in chief have not been argued, but the

Court must credit the pleaded factual allegations as true.

"When the court's jurisdiction is challenged by a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court must credit the pleaded factual allegations as true and draw all reasonable inferences from them in the nonmoving party's favor. *Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). " See court's Order Pacer doc. 67, pg. 5.*

38.    If the appellants' do not have 'standing' in the eyes of the court to complain

that the state is not following its' own election laws, where appellants argue that

these violations are harming their personal and financial efforts, who does? How is

the case brought for a remedy?

39.    This very question was answered by the District court in the instant action,

indicating there is no judicial remedy to stop the appellee from continuing to evade

the above-named state election laws:

40.    **Question from Plaintiff Testerman** – *"If we cannot establish standing in*

*this court, where do we go for remedy?"*

41.    **Answer by the court** – *"But the remedy for this kind of thing, if there's no*

*standing . . . the remedy is just the ballot box."* Plaintiff's January 5, 2024 Hearing

on 'Standing', Transcript, pg. 116, lines 9-15. Also see *Pacer doc 73, pg 3*.

42.    However, the dilemma here is that problems with the balloting is the nature

of this case.

## 1.    The Appellants Have Standing Under the 'Standing' requirements of Article III of the United States Constitution.

43.    In the 1992 decision of *Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)*,

the U.S. Supreme Court made clear that plaintiffs must suffer a concrete,

discernible injury—not a "conjectural or hypothetical one"—to be able to bring

suit in Federal Court. This decision in effect, made it more difficult for plaintiffs to

challenge the actions of a government agency when the actions don't directly affect

them.

44.    The instant case was brought, among other constitutional claims, as an

Elections civil rights case, under 42 U.S.C. 1983:

42 U.S.C. §1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . "

45.    Simply put, the appellants brought this action, along with other claims, as a

Monell claim (*Monell v. Department of Soc. Svcs., 436 U.S. 658 see at 690 (1978)*

seeking declaratory relief in order to hold the governmental of New Hampshire responsible for a constitutional violation of violating N.H. RSA §659:14 and RSA §654:34, committed by the appellees.

46.     Here the appellant's injuries were the violations of these New Hampshire state Election laws which directly affect both appellants.

47.     These injuries were not conjectural or hypothetical, but directly affected and continue to affect each appellant as decades-long voting inhabitants of the state, with a personal and political 'stake' in the outcome of each State Federal Election, and how the appellees actions directly affect them:

> "I work with different people throughout the state to help educate myself and help further what they are doing similar to our cause. In -- in this instance, I recognized that Mr. Ager and [appellee] Mr. Scanlan, in their actions back and forth with letters and just the whole gamut of stuff going on, that a strategy has been allowed and has been set in motion by not following the [Election] law, 659:14. Not following it as written, has allowed a candidate to be selected for me. That's as general as I can get it." *01/05/24 Hearing Transcript, pg. 63, lines 15-25, testimony of appellant Briggs*. Emphasis supplied

48.     Appellant Saya too describes his personal 'stake' shown in his financial efforts, and how these actions also directly affect him:

> " . . . a lot of people running for office call me and they'll ask to have events for them. I've thrown events for Scott Brown, for Don Bolduc, and it costs a lot of money to do things like that. I've worked on Capitol Hill with Kelly Ayotte with regards to veterans affairs." *01/05/24 Hearing Transcript, pg. 77, lines 5-9, of appellant Saya*.

> "And then I received phone calls indicating, well, we need [you to donate] more money because of all these new voters now that are

switching over. And -- and that really concerned me to the point where I'm saying, well, what's going on here." *01/05/24 Hearing Transcript, pg. 77, lines 19-22, of appellant Saya.*

49.     In writing the *Lujan* opinion *above* Associate Justice Antonin Scalia's interpretation of Article III of the Constitution, ". . *plaintiffs must demonstrate that they have suffered an injury in fact, caused by the defendant, which a favorable court decision could redress, to meet the standing requirement to bring a case before the court.*" See *Lujan, 504 U.S. at 560-61.*

50.     In *Lujan*, the Court held that a group of American wildlife conservation and other environmental organizations lacked standing to challenge regulations jointly issued by the U.S. Secretaries of the Interior and Commerce, regarding the geographic area to which a particular section of the Endangered Species Act of 1973 applied. *Lujan, 504 U.S. at 573.*

51.     In the instant case, each of the appellants are directed by the requirements of RSA §659:14 and RSA §654:34, and affected by the appellee (an unelected state official) changing the requirements of these laws—directly impacting the physical and financial efforts of the appellants.

52.     On a similar issue relative to 'standing' in, *Biden v. Nebraska, 143 S.Ct. 2355 (2023)*, the Court's January 9th, 2024 **Order** uses this case regarding the appellants having a 'personal stake' in the case. (*Pacer Doc No. 67, pg.4,* the

District Court cites " . . . *The HEROES Act that allows the Secretary to "waive or modify"*

> *existing statutory or regulatory provisions applicable to financial assistance programs under the Education Act, but does not allow the Secretary to rewrite that statute to the extent of canceling $430 billion of student loan principal. " See Biden at ____.*

53.    In *Biden*, the issue of 'standing' favors the appellants here, where similar to the appellants, the Cares Act, a Federal statute, did not allow the U.S. Secretary to rewrite the statute, where "(a)t least Missouri has standing to challenge the Secretary's program." *Biden at ____.*

51.    Relative to the appellants constitutional injuries, this First circuit court outlined the "under color of state law' Condition in *Cruz-Arce v. Management Administration Services Corporation, 19 F.4th 538, (1st Cir. 2021)*:

> "To defeat a motion to dismiss predicated on the "under color of state law" requirement, a plaintiff need not specifically allege which of these three tests [e.g., public function, state compulsion, or nexus/joint action tests] applies in her/[his] particular case. Nor must the plaintiff intone some catechism of magic words to describe the relationship between private party and the state. In the last analysis, the allegations in the complaint, supplemented with reasonable inferences therefrom and matters susceptible to judicial notice, must comprise a factual predicate sufficient to render it plausible that one of these tests can be satisfied" *See Cruz-Arce at 543-44.*

52.    Where no political party-affiliated member (including appellants ) currently have the right to defend against a state's abuse of their state's Election laws, and challenge these state Election law violations for Federal Elections——any State

Election law in future political contests can be broken without consequence, providing no due process or equal protection to any citizen or inhabitant.

53.    The District court's Order of January 9, 2024, (Laplante, J) provided an example of the plaintiff bearing the burden of showing standing by a preponderance of the evidence. (*Pacer Doc no. 67, pg. 5*)

54.    His Honor in the instant case offered a case that which His Honor recently dismissed, *Castro v. New Hampshire Sec'y of State, No. 23-CV-416-JL, 2023 WL 7110390 (D.N.H. Oct. 27, 2023)*, aff'd sub nom. *Castro v. Scanlan, 86 F.4th 947 (1st Cir. 2023)*, where *Castro* was attempting to disqualify Presidential candidate Donald Trump from the New Hampshire Presidential primary. (*Pacer Doc no. 67, pg. 5*).

55.    Unlike the appellants, *Castro* was from the state of Texas and not an inhabitant of New Hampshire. Additionally, *Castro* had no voting privileges in New Hampshire, and ultimately could not satisfy the "injury-in-fact" component of Article III standing. This is a case that was written by the District court in the instant case which actually favors the appellants.

**3.    The District Court did not address the appellants 'standing' under 18 U.S.C. § 242, depravation of due process of law and depravation of equal application of the law under color of state law.**

56.    The Appellants have Standing because both as a 30+ year inhabitants of New Hampshire, the appellants have a state constitutionally protected right to vote

and in a free and equal election process fairly administered according to the New Hampshire state constitution under Part I, art. 11 where changes to Part I, art. 11, ". . *are prohibited without the express consent of the inhabitants.* " Part I, art. 12. Part I, art. 11. (*Pacer Doc no. 32-1, Plaintiff Complaint, pars 1-2*) provides that: "All elections are to be free, and every inhabitant [4] of the state of 18 years of age and upwards shall have an equal right to vote in any election. Every person shall be considered an inhabitant for the purposes of voting in the town, ward, or unincorporated place where he has his domicile." *Id.*

Testimony of Appellant Briggs:

> "THE COURT: Tell me why you have standing. It'll take a load off you.
>
> THE WITNESS: Okay. So I believe my harm is -- I've had an expectation for a number of years on what is right, what is fair, what is free -- what is a free election, what is my part in this.
>
> THE WITNESS: Okay. So I believe my harm is -- I've had an expectation for a number of years on what is right, what is fair, what is free -- what is a free election, what is my part in this." *01/05/24 Hearing Transcript, pg. 63, lines 1-6, Testimony of appellant Briggs.*

57.    Non-legislative actors such as the Defendants in this case, lack authority to amend or nullify election statutes. *Bush v Gore 531 U.S. 98 at 104 (2000)* and

---

[4] The word inhabitant is the only word used in the Const. of N.H. that has its own definition and it is used in 33 places to define those citizens of N.H. who possess political rights (the right to elect or be elected). This is important because, it is inhabitants who have standing to bring an action in a court of law if the election laws are changed without the consent of the inhabitants, as occurred in the instant case.

under *Heckler v. Chaney, 470 U.S. 821, 833 n.4 (1985),* conscious and express executive policies—even if unwritten—to nullify statutes or to abdicate statutory responsibilities are reviewable to the same extent as if the policies had been written or adopted.

58.     The District court focused primarily on the issue of 'vote dilution' and did not consider the *pro se* appellees state and federal statutory rights (*42 USC 1983 and  18 U.S. Code §242*) to participate in a free and fair election,  where the appellants sought relief from violations of our due process and equal protection of state Election laws *N.H. RSA §659:14*, et seq. and *RSA §654:34*, et seq of which appellants are required to follow. Yet, the appellees changing the time and dates within these laws against those times and dates specified by the New Hampshire state legislature during Federal Elections, caused both appellants injuries as described.

59.     Appellants' argue that each of them individually as voting inhabitants of New Hampshire, and pursuant to their unique and exclusive standing within the non-profit NHGOP organization,—are dissimilar from the average state-wide party supporter—where each appellant contributes essential financial state-wide support and nationally recognized roles as party and self-representing sponsors and benefactors statewide within this non-profit Republican political party. It is for these reasons each of the appellants have a direct financial stake in the case.

60. However and not less important, both appellants suffered constitutional, emotional, and financial injuries as described in their testimonies when these state Election laws were violated by the appellee under color of state law.

**4. The Appellants Argue that the Harper/Bruen Methodology Provides 'Standing' When State Election Laws Are Violated in Federal Elections.**

61. Although the issue of 'standing' is not a component of either *Moore v. Harper, 600 U.S. 1 (decided June 27, 2023)*"Moore" and *New York State Rifle & Pistol Assn., Inc., et al. V. Bruen, 597 U.S. 1,* [hereinafter, *No. 20-843 (U.S. Supreme Court, June 23, 2022),* "Bruen", the appellants believe that the Supreme Court requirements as outlined within these cases, together, form an automatic 'standing' requirement when states abuse their own Election laws relative to Federal Elections.

62. "the court overlooked and/or did not address the Plaintiffs claim that 'Standing' in this action would be required within the two U.S. Supreme court cases of *Moore v. Harper, 600 U.S. 1 (decided June 27, 2023)* and *New York State Rifle & Pistol Assn., Inc., et al. V. Bruen, 597 U.S. 1,* [hereinafter, *No. 20-843 (U.S. Supreme Court, June 23, 2022).* The appellants suggest to this Appellate tribunal that these latest Supreme court cases represent binding precedent for the instant case, but overlooked by the District Court as substantive judicial error. *See Pacer doc no. 70, pgs 1 and 2.*

63.    Additionally, pursuant to recent election and due-process rulings by the U.S. Supreme court, on March 1, 2024, the plaintiffs' invoked Fed. R. Civ. P. 59(e), moving to alter or amend the judgment. (Pacer doc. nos. 70, 73).

64.    Nevertheless, on March 1, 2024, plaintiffs' motion was denied—without addressing the plaintiffs' concerns regarding the Supreme Court's recently decided State Federal Election criterion and Election Civil Rights and due-process case rulings. (*Pacer doc. No. 79*).

65.    Appellees believe that these U.S. Supreme Court cases in question, *Moore v Harper, 600 U.S. 1 (June/2023)*, "*Harper*" taken with the due process and equal protection arguments in *New York State Rifle & Pistol Assn., Inc. v. Bruen, 597 U. S. 1, (2022)*"*Bruen*", have created the State Elections standard, providing the appellants with 'standing' in state Election cases affecting Federal Elections.

66.    Since the *Bruen* and *Harper* decisions, a recently arrived 2024 Elections case out of the U.S. Supreme Court, *Alexander, President of the South Carolina Senate, et al. v South Carolina State Conference of the NAACP, et al. No. 22–807, —Decided May 23, 2024*, "*Alexander*" has brought together the *Harper/Bruen* methodology when it comes to the state and federal legislatures making and adhering to Election laws (not the courts) within their own states.

67.    For the District court to leave "uncured" the appellee's violations of New Hampshire Election Laws *RSA 659:14* and *RSA 654:34*, the Appellee and Chris

Ager (as an unnamed party) will continue their unlawful circumvention and violations of these state Election laws *above* in the upcoming September 2024 federal congressional primary Elections and general Elections, causing additional financial hardships upon each appellant, while causing a disruption to their favored candidate .

68.    In particular, in the recent U.S. Supreme court decision of *Moore v Harper*—below, The Question of the appellee disregarding its' state Election laws *above* Will Continue To Recur Until this Court Resolves It.

"The question whether a State's courts or other entities may nullify, alter, or replace the election regulations enacted ""by the Legislature thereof"" is not going to go away." *See Moore v. Harper at 23. Emphasis supplied*

69.    For decades the Supreme Court has interpreted the "Elections Clause" expansively, enabling states ". . *to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns*". *Smiley v. Holm, 285 U.S. 355 at 366 (1932)*.

70.    Accordingly, *Alexander (2024)* cites both *Harper(2023)* and *Bruen(2022)*.

**Conclusion**

71.    Appellants' are seeking—for this Court of Appeals to send the case back to the District court of New Hampshire for a full hearing on the merits, where the

appellants believe they have standing under state and federal law and under both state and federal constitutions.

> "Legislatures must provide a complete code for congressional elections", including regulations "relati[ng] to notices, registrations, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Smiley, 285 U.S. at 366 as referred to in Moore v. Harper at 21-22 (2023). Emphasis supplied*

72. Concluding, if the appellants do not have standing to bring this case, who does?

Respectfully submitted,

July 15, 2024

/s/ Wayne Paul Saya, Sr.

Wayne Paul Saya, Sr. Plaintiff, pro se
24 Cadogan Road
Nashua, New Hampshire 03062
Waynesaya2@gmail.com
571-220-3344 mobile

/s/ Lynn-Diane Briggs

Lynn-Diane Briggs, Plaintiff, *pro se*
4 Golden Pond Lane
Amherst, New Hampshire 03031
Lynbdance@gmail.com
603-801-6886

## CERTIFICATE OF COMPLIANCE

I, Wayne Paul Saya, Sr. and Lynn-Diane Briggs, hereby certify that the foregoing brief complies with the type-volume limitation of Local Rule 32(a)(7)(B)(i) and because the brief contains 4,530 words, excluding the parts of the brief exempted by local rule 32(f). I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)(A)(B) & (6), because it has been prepared in a proportionally spaced typeface (Times New Roman 14-point or larger) using Microsoft 2017.

**SWORN TO UNDER PAINS AND PENALTIES OF PERJURY this 15th, day of July, 2024.**

/s/ Wayne Paul Saya, Sr.

Wayne Paul Saya, Sr. Plaintiff, pro se
24 Cadogan Road
Nashua, New Hampshire 03062
Waynesaya2@gmail.com
571-220-3344 mobile

/s/ Lynn-Diane Briggs

Lynn-Diane Briggs, Plaintiff, *pro se*
4 Golden Pond Lane
Amherst, New Hampshire 03031
Lynbdance@gmail.com
603-801-6886

## CERTIFICATE OF SERVICE

I, Wayne Paul Saya, Sr., and Lynn-Diane Briggs, Appellants, *pro se*, have caused to deliver the named , APPELLANTS BRIEF WITH 1 EXHIBIT, and the foregoing documents have been served upon the following Defendant by electronic mail and first class postage pre-paid.

David Scanlan, Defendant
Secretary of State of New Hampshire
C/O: Brendan Avery O'Donnell
NH Department of Justice (Concord)
One Granite Place South
Concord, NH 03301
603-271-3650
Fax: 603-271-2110
Email: brendan.a.odonnell@doj.nh.gov


**SWORN TO UNDER PAINS AND PENALTIES OF PERJURY this 15th, day of July, 2024.**


/s/ Wayne Paul Saya, Sr.                    /s/ Lynn-Diane Briggs

Wayne Paul Saya, Sr. Plaintiff, pro se      Lynn-Diane Briggs, Plaintiff, *pro se*
24 Cadogan Road                             4 Golden Pond Lane
Nashua, New Hampshire 03062                 Amherst, New Hampshire 03031
Waynesaya2@gmail.com                        Lynbdance@gmail.com
571-220-3344 mobile                              603-801-6886